IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────

ALMONDO BAKER,

                               Plaintiff,                        OPINION & ORDER

    v.

                                                                   12-cv-125-wmc

LT. FALTYNSKI and
SGT. SCHMIDT,

                              Defendants.
───────────────────────────────────────────────────────────

In this civil action brought under 42 U.S.C. § 1983, plaintiff Almondo Baker alleges that Kettle Moraine Correctional Institution (KMCI) Lt. Faltynski and Sgt. Schmidt failed to protect him from another inmate's attack on or about August 13, 2011. Both defendants move for summary judgment on the grounds that Baker failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Dkt. #17.) That motion has been fully briefed,[1] and the court will now enter summary judgment in favor of the defendants because Baker failed to pursue his grievance so as to exhaust all administrative remedies as mandated by 42 U.S.C. § 1997e(a).

FACTS[2]

**A. Background**

Around August 2, 2011, plaintiff Almondo Baker was placed in a cell with prisoner Talib Akbar at KMCI. Akbar's previous cellmate had been removed due to Akbar's threats.

---

[1] Baker has also filed an "Amended/Supplemental Brief in Opposition," which is essentially a sur-reply to defendants. (Dkt. #31.) Though Baker was not granted leave to file a sur-reply, the court has nevertheless considered his arguments, which do not change the outcome.

[2] In this summary of material facts, the court resolves all legitimate disputes of fact in plaintiff's favor, as well as views all facts in a light most favorable to plaintiff, as the non-moving party. *Anderson v. Libery Lobby, Inc.,* 477 U.S. 242, 255 (1986).

Akbar had been given a "red tag," denoting an inmate who is dangerous or has a history of violence and requiring that inmate to be housed without a roommate.

Almost immediately, Akbar began to threaten Baker with physical harm. Baker alleges that he told defendant Schmidt, the sergeant for unit 3, about his fears and requested to be moved to another cell, but that Schmidt refused to move him. Baker alleges that he then sent defendant Faltynski an informal written request asking her to move him, because he feared for his life. Faltynski denied the request in a written response on August 7, 2011, in which she stated that "[n]ot getting along with your roommate is grounds for a major conduct report, not a room change." On August 13, 2011, Akbar violently assaulted Baker, who was compelled to defend himself.

The next day, Lieutenant Falke issued Baker an Adult Conduct Report #2227356 for a violation of Wis. Admin. Code § DOC 303.17 (fighting).[3] (*See* Staehler Affidavit Exh. A (dkt. #20-1) 1.) Baker received a copy of this report on August 15, 2011. (*See id.*) On August 26, 2011, a disciplinary hearing took place, which Baker attended. (*See id.* at 3.) At that hearing, Baker was found guilty of fighting and was given a disposition of 60 days of disciplinary separation. (*See id.*) Following the disposition, Baker had 10 days to appeal the hearing officer's decision to the Warden. (Staehler Affidavit (dkt. #20) ¶ 12.) Baker did not appeal that decision. (*Id.* at ¶ 13.)

---

[3] Wis. Admin. Code § DOC 303.17 reads: "Any inmate who participates in a fight is guilty of an offense. 'Fight' means any situation where 2 or more people are trying to injure each other by any physical means."

2

### B. Baker's Complaints

#### i. Complaint KMCI-2011-15351

On August 7, 2011, before the physical altercation took place, Baker filed Offender Complaint KMCI-2011-15351, which alleged that: (1) Akbar was mentally unstable and very confrontational; (2) Baker feared for his life; and (3) Baker wished to be moved from the cell as soon as possible. (*See* Rose Affidavit Exh. B (dkt. #19-2) 10.) The complaint was received on August 9, 2011. (*See id.*) After speaking with Lieutenant Faltynski that same day, the institution complaint examiner ("ICE") recommended dismissal of the complaint, because the allegations had "already been brought to the attention of supervisory staff and [were] already under review," although the complaint was not formally dismissed until August 21, 2011, eight days after the attack. (*Id.* at 2-3.)

Based on the record, Baker apparently attempted to appeal this rejection as of August 25, 2011. That appeal was received on August 30, 2011. (*See id.* at 12.) On September 1, 2011, his appeal materials were returned to him because he had not complied with Wis. Admin. Code § DOC 310.11(6), which requires appeals to be submitted to the Corrections Complaint Examiner ("CCE"). (*See id.* at 13.) Baker then resubmitted his appeal, which the CCE received on September 7, 2011. (*See id.* at 4.) On January 25, 2012, the CCE recommended dismissal of the appeal as untimely, finding that Baker offered no good cause for its lateness. (*See id.* at 5.) On January 29, 2012, the Secretary accepted the CCE's recommendation and the appeal was accordingly dismissed for failure to comply with Wis. Admin. Code § DOC 310.13(1). (*Id.* at 6.)

3

    **ii.    Complaint KMCI-2011-16471**

On August 16, 2011, after Baker received the Conduct Report but before his hearing, he also filed Offender Complaint KMCI-2011-16471. (*See* Rose Affidavit Exh. C (dkt. #19-3) 5.) In that complaint, Baker alleged that he informed staff before the attack that he feared for his life; staff failed to act; Akbar attacked him; and he was being unfairly charged with fighting when he was "just defending [him]self." (*See id.*) That complaint was apparently received on August 23, 2011, and rejected that same day as outside the scope of the inmate complaint review system ("ICRS"):

> The complainant states a conduct report has been written, and is complaining of matters involved with the alleged incident. The complainant is challenging the factual basis of the conduct report or describing mitigating factors to explain the complainant's actions and behavior. Those matters are considered during summary disposition or by a hearing officer/committee acting as an independent fact-finding body, and its judgment must be accepted. Once a conduct report is issued, the disciplinary process is initiated, and complaints of this nature are outside the scope of the inmate complaint review system as noted under DOC 310.08(2)(a), Wis. Adm. Code.

(*Id.* at 2.) Baker also did not appeal the rejection of this complaint to the reviewing authority. (Rose Affidavit (dkt. #19) ¶ 19.)

OPINION

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Seventh Circuit, exhaustion of administrative remedies is a "condition precedent to suit." *Dixon v. Page*, 291 F.3d 485, 488

4

(7th Cir. 2002); *see also Perez v. Wis. Dep't of Corr.*, 183 F.3d 532, 535 (7th Cir. 1999) (holding that where administrative remedies have not been exhausted, "the district court lacks discretion to resolve the claim on the merits"). Moreover, the PLRA requires "proper exhaustion; that is, the inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (internal quotation marks omitted). "If the prison's administrative authority rejects a complaint because the prisoner failed to use the prison grievance system properly, the prisoner runs the risk that his claim will be unexhausted indefinitely." *Sanders v. Lundmark*, No. 11-cv-206-slc, 2011 WL 4699139, at *2 (W.D. Wis. Oct. 5, 2011) (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

The Wisconsin Department of Corrections maintains an Inmate Complaint Review System in all state adult correctional facilities in order to afford inmates "a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin. Code § DOC 310.01. Once an inmate files a formal complaint, an ICE is assigned to investigate and recommend a decision to the "appropriate reviewing authority," such as a warden, bureau director, administrator or designee who is authorized to review and decide an inmate complaint at the institution level. *Id.* at § DOC 310.07(2). An ICE may return a complaint to the inmate if it does not comply with ICRS procedure. *Id.* at § DOC 310.07(1). If an inmate has submitted a proper complaint that complies with procedure, he has the right to appeal any adverse decision to the CCE, who will review the complaint and make a recommendation to the Office of the Secretary. *See id.* at § DOC 310.13. The Secretary of the Wisconsin Department of Corrections shall review the CCE's report and make a final decision. *See id.* at § DOC 310.14.

There are certain limits to an inmate's use of the ICRS. For example, under Wis. Admin. Code § DOC 310.08(2)(a), an inmate may not use the ICRS to raise "[a]ny issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." Accordingly, this court has held that if an issue "is related to a conduct report, the inmate must raise it at the time of his disciplinary hearing and again on appeal to the warden, assuming the matter is not resolved at the disciplinary hearing stage." *Lindell v. Frank*, No. 05 C 003 C, 2005 WL 2339145, at *1 (W.D. Wis. Sept. 23, 2005). This is consistent with Wis. Admin. Code § DOC 303.76(7)(a), which states that an inmate who is found guilty after a disciplinary hearing on a major violation may appeal the decision, the sentence or both to the warden within 10 days of the hearing or receiving a copy of the decision, whichever is later. After that appeal is complete, an inmate may use the ICRS only to appeal procedural errors. Wis. Admin. Code § DOC 303.76(7)(d); *see also id.* at § DOC 310.08(3).

Baker does not argue that he exhausted his administrative remedies with respect to the second complaint, KMCI-2011-16471, nor could he, since it is undisputed that he did not appeal the rejection of that complaint. Rather, Baker argues that he exhausted all administrative remedies with respect to his *first* complaint, KMCI-2011-15351. Defendants respond that exhaustion of administrative remedies with respect to that complaint does not exhaust Baker's remedies with respect to the claims he brought in this suit, since at the time he filed Complaint KMCI-2011-15351, the attack of which he complains had not yet occurred. The court need not resolve this question, however, because even if exhaustion of remedies with respect to KMCI-2011-15351 would suffice for purposes of the PLRA, the record indicates that Baker did *not* properly exhaust his administrative remedies.

6

The exhaustion requirement found in the PLRA mandates "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This requirement demands compliance with all prison procedural rules. As the Supreme Court has recognized, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Thus, as previously noted, "a prisoner who does not *properly* take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis added).

Here, with respect to his appeal of KMCI-2011-15351, Baker failed to comply with the requirements imposed by the Wisconsin Department of Corrections because his appeal was dismissed as untimely for failure to comply with Wis. Admin. Code § DOC 310.13(1), rather than on the merits. Baker did not, therefore, "properly exhaust" his remedies with respect to his failure-to-protect complaint, barring his lawsuit under the PLRA. *See Pozo,* 286 F.3d at 1025 (failure to exhaust administrative remedies where inmate "filed a timely and sufficient complaint but did not file a timely appeal").

Moreover, as defendants point out, exhaustion also requires an inmate to raise any issue related to a conduct report at the disciplinary hearing on the report and again on appeal to the warden. *See, e.g.*, *Sanders,* 2011 WL 4699139 (noting that inmate would likely have had a complete defense to conduct violation if his version of events had been adopted); *Madyun v. Pollard*, No. 08-cv-34-bbc, 2008 WL 2225689, at *2 (W.D. Wis. May 29, 2008) (finding lack of exhaustion due to inmate's failure to appeal a related conduct report);

7

*Lindell*, 2005 WL 2339145. Because his claim for failure to protect is "related to" the conduct report he received for fighting with Akbar, Baker was required to pursue administrative remedies found in Wis. Admin. Code § DOC 303. *See* Wis. Admin. Code § DOC 310.08(2)(a) (explaining that the ICRS is not available to review issues related to a conduct report unless the inmate has first exhausted the Chapter 303 disciplinary process). As in *Madyun*, Baker was found guilty of the conduct report but failed to appeal the decision. Thus, he did also not complete that grievance process as required by § 1997e(a).

Baker argues that any appeal from his disciplinary hearing would have been futile because he was only permitted to appeal procedural errors, but this argument is unavailing. As an initial matter, exhaustion is necessary even if "the prisoner believes that exhaustion is futile." *Dole*, 438 F.3d at 808-09. Additionally, Baker misreads Wis. Admin. Code §§ DOC 303.76 and 310.08. Following a disciplinary hearing, an inmate may appeal the decision, sentence or both to the warden; the regulations place no restrictions on the subject matter of the appeal. *See* Wis. Admin. Code § DOC 303.76(7)(a). The warden may affirm, modify or reverse the decision and/or sentence, or may return the case to the committee for further consideration. *Id.* at § DOC 303.76(7)(c). Only after an appeal to the warden is complete may a prisoner use the ICRS, which is limited to challenging "the procedure used in . . . the disciplinary process." *Id.* at § DOC 310.08(3). Therefore, Baker was free to appeal the outcome of the disciplinary hearing relating to Conduct Report #2227356 to the warden, without being limited to procedural errors.

Next, Baker asserts in his "Amended/Supplemental Brief" that he *did* submit the failure-to-protect issue to the warden under Offender Complaint KMCI-2011-15351, and that the warden's rejection of that complaint meant he was precluded from raising it during

8

the disciplinary hearing. This argument is equally unavailing. The fact that Baker filed a grievance seeking to be removed from a cell where he felt unsafe in no way precluded him from defending himself at the disciplinary hearing on the grounds that Akbar was unreasonably dangerous and had attacked him, forcing him to defend himself. Indeed, this was apparently what Baker argued, albeit unsuccessfully. Nor was Baker precluded from appealing the hearing outcome to the warden after this argument failed.

Baker also appears to argue that he "did in fact submit the issue to the Warden on [a]ppeal to conduct report #2227356." (Amended/Supplemental Br. (dkt. #31) 3.) Unfortunately, the sworn affidavit of the hearing officer says otherwise (Staehler Affidavit (dkt. #20) ¶ 13), and Baker has submitted no evidence creating a genuine dispute of material fact on this point. Instead, Baker faults *defendants* for not submitting his appeal documents. Defendants are not responsible for submitting evidence on Baker's behalf. They have produced evidence indicating he failed to exhaust his administrative remedies, and Baker has failed to come forward with any evidence that would allow a reasonable trier of fact to find in his favor. Thus, there is no genuine dispute of material fact on this point.

Additionally, Baker contends that he is not required to exhaust his administrative remedies because the U.S. Attorney General has not certified the Wisconsin State grievance procedures as mandated in the past by *McCarthy v. Madigan*, 503 U.S. 140 (1992). *McCarthy* was superseded by the passing of the PLRA, prompting the Supreme Court to recognize that "[p]risoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Woodford*, 548 U.S. at 85.

Finally, Baker argues that when Complaint KMCI-2011-16471 was rejected by prison officials, they "failed to inform [him] that he could file [an] [i]nmate complaint on

9

non-procedural errors," which effectively made this remedy unavailable since the regulations are "ambiguous and confusing." (Amended/Supplemental Br. (dkt. #31) 4.) This argument is itself ambiguous and confusing, since, as previously discussed, the regulations do not permit an inmate to file a complaint on non-procedural grounds following a disciplinary hearing. They *do* permit non-procedural appeals to the warden, however. Assuming that Baker intended to argue that the regulations specifically governing disciplinary proceeding appeals to the warden are confusing, "a prisoner's lack of awareness of a grievance procedure [generally] does not excuse his non-compliance." *Goodvine v. Gorske*, No. 06-C-0862, 2008 WL 269126, at *4 (E.D. Wis. Jan. 30, 2008) (citing *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)). In any event, the record contains a "Notice of Major Disciplinary Hearing Rights and Waiver of Major Hearing and Waiver of Time," which expressly informs Baker that:

> You are further advised that you may appeal (form #DOC-91) the Hearing Officer's or Adjustment Committee's finding of guilt and/or punishment to the Warden/Superintendent within 10 days after either a due process hearing or after you receive a copy of the decision, whichever is later.

(Staehler Affidavit Exh. A (dkt. #20-1) 6.) Baker *signed* this Notice, certifying that he read and fully understood the Notice. (*See id.*) Prison officials therefore *did* inform Baker of his right to appeal the outcome of the disciplinary hearing. Because he failed to do so, § 1997e(a) of the PLRA bars his suit.

      This is an admittedly harsh result, particularly if the court credits Baker's allegations (as it must at this stage) that (1) Akbar had been "red tagged" as so dangerous that he could only be housed without a roommate; (2) Baker complained to guards about the danger Akbar represented as his cellmate; and (3) Akbar violently assaulted Baker without

provocation. Whether the strict exhaustion requirements should afford some leeway in cases like this, where the inmate made repeated efforts to raise his claim but did not perfect a final appeal, is not up to this court. Absent such an exception, Baker's complaint is barred by his failure to comply with the PLRA.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment (dkt. #17) is GRANTED.

2. Plaintiff Almondo Baker's motion to amend his complaint (dkt. #23) is DENIED as moot.

3. Defendants' motion for stay of proceedings (dkt. #33) is DENIED as moot.

4. The clerk of court is directed to enter judgment accordingly.

Entered this 25th day of February, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge